J-A14024-17
J-A14025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| KATHERYN M. HOY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| WILLIAM R. WHEELER, | |
| Appellant | No. 1871 EDA 2016 |

Appeal from the Order Entered May 12, 2016
In the Court of Common Pleas of Chester County
Domestic Relations at No(s): No. 01181N 2014 PACSES No. 943114856

| | |
|---|---|
| LAURIE ANN WHEELER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| WILLIAM R. WHEELER, | |
| Appellant | No. 1872 EDA 2016 |

Appeal from the Order May 12, 2016
In the Court of Common Pleas of Chester County
Domestic Relations at No(s): No. 2078N 2008 PACSES No. 55110476

BEFORE: BENDER, P.J.E., BOWES AND SHOGAN, JJ.

MEMORANDUM BY BOWES, J.: **FILED NOVEMBER 21, 2017**

In these consolidated child support appeals, William R. Wheeler ("Father") appeals, *pro se*, the orders finding him in contempt of child

support orders relating to two sons by different women, Laurie Ann Wheeler and Katheryn M. Hoy (collectively Appellees). We affirm.[1]

Father married Ms. Wheeler on September 30, 2006 and separated during November 2008. One son was born of the brief marriage. Several years later, during April 2014, Father had a son with Ms. Hoy. Father's financial support of his two sons has been abysmal. As of the May 1, 2015 interim child support orders that form the starting point for our review, Father had accrued arrears of $3,499 and $3,169 for Ms. Wheeler and Ms. Hoy, respectively. The May 2015 interim orders set Father's ongoing monthly support obligations at $451 for Ms. Hoy and $512 for Ms. Wheeler.[2]

These cases share a tortuous procedural history, which we set forth as follows. On June 17, 2015, Father filed petitions to modify the monthly support obligations that were established in the interim orders. Father alleged that he suffered a shoulder injury during October 2014, which he reinjured on February 4, 2015, that prevented him from obtaining employment without surgical intervention. The shoulder was repaired

---

[1] The appeals flow from identical orders based on similar facts, and the arguments Father levels in the respective briefs are virtually indistinguishable. Accordingly, we consolidated the appeals for review and disposition.

[2] The interim order relating to Ms. Hoy included an additional $400 per month for daycare. However, the additional obligation was deleted from the final order entered during August 2015 because the child no longer attended daycare.

surgically on July 21, 2015. The matter was assigned to Judge Katherine B.L. Platt, who was presiding over the then-pending exceptions filed by Ms. Hoy and Ms. Wheeler to the report and recommendations that the support master submitted during March and April of 2015. While Father also leveled exceptions to the master's recommendations, he subsequently withdrew those objections.

On August 27, 2015, Judge Platt denied Appellees' exceptions and entered final support orders setting Father's monthly child support obligations at $451 and $531 for Ms. Hoy and Wheeler, respectively.[3] As it relates to the argument Father presents herein, Judge Platt imposed monthly support obligations totaling $982 without addressing the merits of Father's unresolved petition to modify or referencing the alleged shoulder injury that formed the basis of Father's petition. In fact, Judge Platt did not confront Father's petition for modification until February 22, 2017, nineteen months after it was filed, when she ultimately reduced Father's combined monthly obligation by $132, from $982 to $850.[4]

---

[3] None of the parties appealed the final child support order.

[4] The modification order is not included in the certified record. The parties described the order during oral argument before this Court. It is unclear whether Judge Platt applied the modification retroactive to June 17, 2015, the date Father filed his motion to modify.

Meanwhile, on October 7, 2015, approximately one-and-one-half months after the August 2015 order, Ms. Hoy filed a petition for contempt against Father asserting that he failed to comply with the final support order directing him to pay $451 per month in child support. A different judge, the Honorable Patrick Carmody, was assigned to preside over the contempt petition.

Thereafter, Father was imprisoned between December 10, 2015 and February 5, 2016, after he pled guilty to misdemeanor harassment and a violation of the Wiretap Act in relation to his interactions with Ms. Wheeler and her attorney.[5] Judge Carmody also presided over the criminal matters. Upon Father's release from confinement, Judge Carmody granted Father a continuance in the contempt proceeding so that Father could obtain counsel. The hearing was rescheduled for May 12, 2016.

In the interim, during March 2016, Ms. Wheeler filed with Judge Carmody a petition for contempt similar to Ms. Hoy's. Like her counterpart, Ms. Wheeler alleged that Father failed to comply with the court-ordered support obligations outlined in the August 2015 order. Father objected to both petitions due to the fact that, *inter alia*, Judge Platt had yet to address

_____

[5] Father's release from confinement was subject to a detainer for a violation of a prior contempt order due to non-payment of child support. The detainer was lifted on February 5, 2016, after Father satisfied the $411 purge condition.

his then-pending petition for modification. He also asserted that he was entitled to a credit from an October 2015 overpayment and noted that he made partial support payments in October, November, and December 2015.

On March 31, 2016, Ms. Wheeler agreed to consolidate her contempt petition with Ms. Hoy's for the purpose of the May 12, 2016 evidentiary hearing. As a result of that concession, Judge Carmody entered an order directing Father to pay Ms. Wheeler child support in the amount of $531.00 for each of March and April 2016. Father consented to the consolidation and agreed to submit the required payments to Ms. Wheeler.

Despite receiving additional time to obtain counsel, Father represented himself during the May 2016 contempt hearing. At the outset of the proceeding, Father noted that his petition to modify was still pending before Judge Platt and requested a continuance of the contempt proceedings so that all three matters could be consolidated and heard together. Judge Carmody denied Father's request, and rejected Father's ensuing motion for recusal. N.T., 5/12/16, at 8.

Jennifer Benfield, the Chester County support enforcement specialist, and Ms. Wheeler testified during the contempt hearing. Ms. Benfield outlined Father's support obligations and delineated his sporadic partial payments to both mothers since August 2015. Ms. Benfield presented evidence to demonstrate that, in the nine months between August 2015 and April 2016, Father paid Appellees the court-ordered amounts only once. On

three occasions he paid approximately sixty percent of his child support obligations, and on one month he paid roughly forty-two percent. Most frequently, however, Father failed to pay anything. Indeed, during four separate months, August and September of 2015 and January and March of 2016, Father paid $0 of $982 monthly child support owed to Appellees.

In addition to the evidence presented by Ms. Benfield, Ms. Wheeler testified about Father's non-compliance with the March 31, 2016 consent order wherein he agreed to pay her $531 per month for each of March and April 2016. *See* N.T., 5/12/16, at 42-43; Plaintiff's Exhibit M-3. As noted, *supra*, Father paid her little more than half of what was owed for that two-month period. *Id*. at 44-45.

Father did not testify during the hearing or attempt to explain why he could not comply with any of the court orders. However, over Appellees' objections, he introduced physician verification forms outlining the treatment that he received on his injured shoulder. Father neglected to expound upon the information in the exhibits, however, nor did he explain how the shoulder injury or the resulting surgery, both of which preceded the August 2015 order, affected his ability to comply with support orders or reduce the escalating arrears, which had ballooned to $15,382.18 by the date of the hearing.

At the close of the proceedings, the trial court entered the above-referenced orders finding Father in contempt for nonpayment of the

respective child support orders. The contempt orders directed Father to comply with his monthly support obligations and specified that his failure to fulfil those obligations would result in six months imprisonment, subject to the purge condition of satisfying the missed payments. These timely appeals followed.[6]

Both appeals assert identical issues, which we restate for clarity as follows:

> 1. Whether the trial court erred in finding Father in contempt without first addressing his June 17, 2015 motion to modify child support.
>
> 2. Whether the trial court erred in overruling his requests to continue the contempt petitions until the trial court addresses his June 17, 2015 motion to modify.
>
> 3. Whether the trial court erred in refusing Father's motion for recusal when the court "[was] extremely biased in [its] decision regarding both contempt . . . and [an unrelated] felony wiretap conviction."

Father's brief(s) at 6-8. Neither Appellee filed a brief.

While Father leveled three individual issues in his statement of questions presented, he submits one inter-related argument for our review.

---

[6] The thirty-day appeal period normally would have expired on June 11, 2016; however, since that date was a Saturday, Father had until Monday, June 13, 2016, to file his appeals. *See* 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.").

The collective assertion assails Judge Platt's delay in addressing the merits of Father's petition to modify his support obligation.

As it relates to all three components of Father's argument, we review the trial court's decisions for an abuse of discretion. *See e.g. Scampone v. Grane Healthcare Company*, 2017 PA Super 257 at *21 ("An appellate court presumes judges are fair and competent, and reviews the denial of a recusal motion for an abuse of discretion."); *Ferko–Fox v. Fox*, 68 A.3d 917, 925 (Pa.Super. 2013) ("This Court reviews a trial court's decision to grant or deny a continuance for an abuse of discretion."); and *Orfield v. Weindel*, 52 A.3d 275, 278 (Pa.Super. 2012) ("Our scope of review when considering an appeal from an order holding a party in contempt of court is narrow: We will reverse only upon a showing of an abuse of discretion"). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias or ill-will." *Ferko–Fox*, *supra* at 925.

First, we address Father's assertion that the trial court improperly denied his motion for recusal. As noted previously, we presume the trial court to be fair and competent. *Scampone*, *supra*. Instantly, Father claims that Judge Carmody was biased, vexatious, and obdurate because he refused Father's request for a continuance, and he also asserts that the

jurist could not be impartial after he presided over Father's wiretapping and harassment convictions. *See* Father's brief at 7-8.

Father's initial claim fails because he neglected to identify anything in the certified record to demonstrate that Judge Carmody was predisposed to rule against him. Preliminarily, we observe that Father did not assail the court's partiality during the hearing based upon the unrelated criminal proceedings. Thus, that aspect of his argument is waived. More importantly, Judge Carmody permitted Father to develop a record of his objection to the court's ruling on the continuance, explained that he did not view the adverse ruling as a basis to recuse, and noted that his demeanor, which Father had called into question, was the product the court's interactions with Father during the hearing. We cannot discern an abuse of discretion from the foregoing circumstances. Father neglected to support his bare allegations of bias with evidence of prejudice and, without more, the facts that the trial court denied Father's request for a continuance and previously presided over an unrelated criminal matter are not tantamount to partiality or incompetence. Thus, no relief is due.

Father's remaining arguments fare no better. As noted, Father asserts that, absent resolution of his petition for modification, Judge Carmody lacked authority to impose a sanction for contempt. For the following reasons, we disagree.

"The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses." **R.K.J. v. S.P.K.**, 77 A.3d 33, 37 (Pa.Super. 2013). As we stated in **Orfield**, **supra**, at 278, "[t]he purpose of a civil contempt order is to coerce the contemnor to comply with a court order." In this scenario, civil contempt is governed by 23 Pa.C.S. § 4345, which provides:

> **(a) General rule.**—A person who willfully fails to comply with any order under this chapter, except an order subject to section 4344 (relating to contempt for failure of obligor to appear), may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
> (1)  Imprisonment for a period not to exceed six months.
>
> (2)  A fine not to exceed $1,000.
>
> (3)  Probation for a period not to exceed one year.
>
> **(b) Condition for release.**—An order committing a defendant to jail under this section shall specify the condition the fulfillment of which will result in the release of the obligor.

23 Pa.C.S. § 4345.

Presently, Father argues that Judge Carmody erred in refusing to continue the Appellees' contempt proceedings against him until after Judge Platt resolved the petition for modification. Father alludes to his financial status in order to extrapolate the notion that the trial court could not conceivably determine whether he was in contempt of the August 2015 support orders without first addressing the motion to modify. The

implication of Father's premise is that, without addressing his financial status, Judge Carmody could not possibly find him in contempt. There is some merit in Father's unstated assertion, and it is accurate insofar as a contemnor's ability to pay child support is particularly relevant as it relates to the imposition of imprisonment as a sanction, and to lesser degree, in forming an affirmative defense. However, this is not the crux of Father's complaint.

In order to prevail on their respective petitions for contempt, Misses Wheeler and Hoy were required to prove by a preponderance of the evidence that Father violated the terms of the child support orders. *Orfield*, *supra* at 279. Thereafter, Father was entitled to adduce evidence to establish his present inability to comply with the orders or make up the arrears. *Id*. To the extent that Father could meet that evidentiary threshold, the trial court was required to fashion a purge condition commensurate with Father's ability to pay. As we stated in *Orfield*, *supra*, "When the alleged contemnor presents evidence that he is presently unable to comply, the court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced beyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply." *Id*. quoting *Hyle v. Hyle*, 868 A.2d 601 (Pa.Super. 2005). This latter principle is rooted in due process concerns regarding the imposition of confinement as a

coercive sanction that is impossible to fulfill. As the **Hyle** Court explained, "a court may not convert a coercive sentence into a punitive one by imposing conditions that the contemnor cannot perform and thereby purge himself of the contempt." **Id**. at 606; **see also Childress v. Bogosian**, 12 A.3d 448 (Pa.Super. 2011) (when alleged contemnor presents evidence of present inability to comply with court order the court, trial court is required to consider ability to satisfy purge condition to effect release from imprisonment).

While the relevance of Father's ability to pay flows directly from due process concerns relating to the imposition of imprisonment as a sanction, the obligor's ability to pay may also form a defense to a finding of contempt. In **Calloway**, **supra**, this Court extended this sanction-related principle to summarily affirm a trial court's decision to dismiss a contempt petition without discussing the pertinent due process concerns, despite an otherwise contumacious violation of the support order. After referencing § 4345 and its attendant rule of civil procedure, Pa.R.C.P. 1910.21, the **Calloway** Court reasoned that, since the obligor in that case was not capable of satisfying **any** purge condition, "the court was unable to impose a contempt [o]rder[.]" **Id**. at 710. We reasoned, "Civil contempt by its nature is curative and not punitive; therefore, the inability to impose an Order which the appellee could fulfill required that the petition for civil contempt be dismissed." **Id**. As the trial court in **Calloway** found that the obligor could not satisfy any purge

conditions, our abridged analysis avoided the crucial question concerning the relevance of the ability to pay when a trial court finds an obligor in contempt for non-payment but foregoes imprisonment as a corrective sanction, imposes a nominal sanction, or fashions a reasonable purge condition as described in *Orfield*. As the predicate due process concern is absent in those situations, presumably, so too is the concomitant consideration of the obligor's financial status.

Nevertheless, the upshot of *Calloway* is that support obligors who are unable to comply with support obligations through no fault of their own may assert financial inability as a defense to a finding of contempt. However, to invoke that defense, the obligor must demonstrate that he or she made a good faith effort to comply with such orders despite the financial impediment that forms the basis of the defense. *Hopkinson v. Hopkinson*, 470 A.2d 981, 986 (Pa.Super. 1984) (defense of financial inability was inapplicable where husband, *inter alia*, failed to demonstrate good faith effort to comply with obligations) (overruled on other grounds by *Sonder v. Sonder*, 549 A2d 155 (Pa.Super. 1988) (*en banc*).

Instantly, Father neglected to assert during the evidentiary hearing his financial inability to pay child support as a defense to the Appellees' contempt petitions, and the trial court did not consider it. First, as it relates to his request for continuance, Father's reliance upon the aforementioned legal principle is misplaced. In denying Father's request, the trial court

acknowledge Father's frustrations with Judge Platt's delays in resolving his motions to modify, but determined that it was imperative for the court to avoid compounding the mistake with additional delays in the contempt proceedings which had been pending since October 2015. Accordingly, the trial court proceeded with the two contempt petitions that were before it and left the pending modification for Judge Platt to resolve in due course. While Father's ability to comply with the support orders may be relevant, contrary to Father's protestations, his motions to modify the support order were not indivisible components of the contempt issue. To be clear, notwithstanding the open status of Father's motions to modify the support obligations, Judge Carmody afforded Father the opportunity to introduce evidence concerning his ability to comply with the underlying orders. Under these facts, we cannot conclude the trial court's denial of Father's continuance was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

Furthermore, even if we deemed Father's preoccupation with Judge Platt's delay in disposing of the petitions for modification as an implicit invocation of a defense based upon his inability to pay, that claim fails because the certified record establishes that Father never demonstrated a good-faith effort to comply with his financial obligations to his two sons. Stated plainly, for the majority of these support proceedings, Father willfully violated the trial court's orders to pay child support. This is not a case where Father fell behind on his support payments due solely to his physical

injury and Judge Platt's failure to confront the ensuing petition for modification in a timely manner. If that were the case, we would be more sympathetic to Father's stated struggle to comply with the August 2015 orders. In reality, however, Father's pre-injury history of support is sub-standard at best. When Father filed the June 17, 2015 petitions for modification, he had already accrued at least $6,668 in support arrears for his two sons. Thus, while Father may insinuate that he would have complied with his support obligations but for Judge Platt's delay, the certified record belies that proposition and reveals Father's record of compliance for what it is, inadequate. Hence, the trial court did not err in finding that Appellees proved by a preponderance of the evidence that Father violated the child support orders.

Finally, as it relates specifically to Ms. Wheeler's petition for contempt, we observe that, in addition to violating the August 2015 support order, Father failed to comply with the March 31, 2016 stipulation to pay Ms. Wheeler the monthly sum of $531 for March and April 2016. As noted, *supra*, Father paid approximately one-half of the total owed under the March accord. Thus, even if Father's underlying complaint regarding Judge Platt's delays had formed a basis to reverse the finding of contempt relating to the

August 2015 orders, which it does not,[7] the trial court properly determined that Father is in contempt of the stipulated order that he assented to six weeks earlier.   Accordingly, we affirm the contempt order relating to Ms. Wheeler on that basis also.

Orders affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


Date: *11/21/2017*

---

[7] Although we conclude that the trial court did not abuse its discretion in finding Father in contempt of the governing child support orders, we must emphasize that the one-and-one-half-year delay between the June 2015 petition for modification and its resolution on February 22, 2017 is inexcusable.   While we appreciate that Father requested at least one continuance due to his two-month incarceration, we stress the importance of prompt resolution of modification petitions in order to avoid situations where the support obligor becomes overburdened with the obligation, falls hopelessly behind cascading arrears, and potentially abandons his or her commitments entirely.   In that situation, an eventual finding of contempt would be a hollow victory for the child who had been denied financial support.